Isidobe Levine, J.
This case presents another episode in the continuing frustrations of the Family Court in attempting to achieve speedy and effective justice for litigants, by reason of its fragmented and truncated jurisdiction. t
In the case at bar, wherein petitioner seeks' an order of support ■from her husband, the parties and their attorneys after extended conference with each other, and after a conference with the court, finally resolved all their differences, not only in this court but •in their proceedings pending in the Supreme Court, as well as other claims and cross claims not yet reduced to formal legal court proceedings, by an over-all package agreement and stipulation, including a provision for the support of petitioner, by an oral stipulation dictated into the record before the court embodying all the terms and conditions of their agreement of settlement as follows:
1. That the wife shall transfer to the husband all right, title, and interest and in and to all real property now owned by the petitioner and respondent jointly.
2. That petitioner release any claim she has for the proceeds of sale of any real property which was heretofore owned by the petitioner and respondent jointly, which shall include petitioner’s execution of a stipulation of discontinuance of an action pending ■in the Supreme Court, Queeins County, between the parties.
3. That petitioner release all her right, title and interest in and to any stock brokerage account presently maintained by the husband and wife jointly.
4. That the husband pay to the wife "as and for a property settlement the sum of 610,000.
*609 5. That the husband, pay the wife the sum of $1,500 as repayment to her of sums heretofore advanced to him.
6. That the husband agrees to transfer to petitioner a 1972 Vega automobile presently in the name of the husband, “ effective as soon as the documents can be effectuated.”
7. That the husband pay to the wife the sum of $150 weekly, based on the husband’s present income, with the further provision that in the event of any decree of divorce, same shall include a provision for $150 alimony, until May 26, 1973, at which time and subject to the approval of the Judge of the rendering court, the question of the quantum of permanent alimony after May 26, 1973 shall be referred back to the Family Court for re-evaluation, based upon the husband’s then income.
8. That the husband will pay to the wife one half of the last month’s rent by way of a settlement of their differences with respect to said rent.
Almost before the ink was dry on the stipulation dictated into the record, the parties got into a dispute as to when the Vega automobile was to be transferred to petitioner, she claiming that an oral agreement made after the stipulation was agreed upon and entered into the record, provided for the transfer of the automobile the following day and the respondent contending that the Vega was to be transferred “ effective as soon as the documents can be effectuated ” (quoted portion is taken directly from the record).
By reason of the afore-mentioned dispute petitioner now contends, by motion made within two weeks after the settlement, that the respondent breached the stipulation, that she no longer trusts him, and wishes to elect to declare the agreement at an end, and to have the case restored to the calender for trial. Respondent denies any breach of the agreement, refers to the transcript of the stipulations in the record where respondent’s attorney clearly .stated that the transfer of the 1972 Vega was not to be made now. Whereupon petitioner’s attorney immediately replied “Effective as soon as the documents can be effectuated.” Respondent contends that he has always been and is now ready, willing and able to comply with the terms and conditions of the stipulations of settlement, and urges the court to enforce compliance therewith under penalty of contempt upon petitioner should she fail to comply therewith.
Initially the court holds that as a matter of fact and law, upon the facts as presented herein, there has been no breach of the agreement by the respondent, where no claim is made of fraud, inadvertence, mistake or collusion, with respect to the *610 stipulation made between the attorneys in open court (Family Ct. Act, § 165; CPLR 2-104), the latter of which reads as follows: “ An agreement between parties or their attorneys relating to any matter in an action, other them one made between counsel in open court, is not binding upon a party unless it is in a writing subscribed by him or his attorney or reduced to the form of an order and entered.” (Emphasis added.) (See, also, Matter of Schlossberg v. Schlossberg, 62 Misc 2d 699; Yonkers Fur Dressing Co. v. Royal Ins. Co., 247 N. Y. 435.)
Moreover, as heretofore noted, petitioner’s affidavit in support of the motion to vacate herein, was made on November 11, 1972, the stipulation having been made in open court en October 30, 1972, a span of only 12 days. An examination of the minutes reveals that there was no time limit set for compliance with its terms. It is well-settled law that: “ When a contract fails to establish the time for performance, the law implies that the act shall be done within a reasonable time * * * and when an agreement sets no time within which a demand for performance must be made, the law will imply that it must be made within a reasonable time after the event out of which the right to make the demand arises ”. (Valley Nat. Bank of Long Island v. Babylon Chrysler-Plymouth, 53 Misc 2d 1029, 1031-1032, affd. 28 A D 2d 1092.)
Even if the court were to find a breach of the stipulation by the respondent herein, which it does not, it would nevertheless hold as a matter of law that once a stipulation has been spread upon the record and entered as an order of the court, as herein done, a Cinovation ” occurs and petitioner’s remedy under her former cause of action would cease to exist (CPLR 2104).
See A & C Employment Agency v. Alan Mercantile Corp. (53 Misc 2d 768), which holds that a new agreement, even though executory in whole or in part, which expressly or by implication discharges or is a substitute for an original claim or contract is valid and enforceable.
See, also, Langlois v. Langlois (5 A D 2d 75), where it was held that an agreement settling a claim prior to suit or made out of court during the pendency of an, action is presumed to be a mere executory accord, but when the case is actually reached in court and a .settlement is agreed upon, and is spread upon the record as a disposition of the case, it is construed as a superseding agreement. To this very effect see Schlanger v. Schlanger (129 N. Y. S. 2d 760), where the court directed the defendant therein to comply with the terms of a stipulation entered into in open court, holding that the stipulation fully and clearly reflected the *611 voluntary agreement of the parties that it was not coerced by any improper pressure by the court; also, that it was not inequitable and unjust.
Petitioner has alleged in her memorandum of law that a breach of the agreement by the respondent (if one were found by the court, which it does not) would entitle her to repudiate the agreement and seek her legal remedies for support de novo independently of the stipulation dictated into the record. How: ever the authorities cited by petitioner apply only to those situations where the parties have executed a formal separation agreement outside the confines of a pending action or proceeding. Such an agreement must be a formal document which authenticates the fact of a physical separation, (Gleason v. Gleason, 26 N Y 2d 28; Nitschke v, Nitschke, 66 Misc 2d 435.) In addition the agreement must' be “ written ” and “ subscribed ” or “ acknowledged ” in the form which is sufficient for a deed to be recorded (Jacobs v. Jacobs, 55 Misc 2d 9). At the very least a “ separation agreement ” must recite that the parties are living separate and apart. (Martin v. Martin, 63 Misc 2d 530.) Clearly there is no such ‘ ‘ separation agreement ” born from the stipulation in the case at bar, and indeed, the ■stipulation does not even recite that it is to survive the entry of an order as a separaté legal obligation.
One most interesting case, and as relevant as any case could possibly be to the facts and law applicable to the case at bar, is the case of Saunders v. Saunders, decided by Mr. Justice Heüler at Special Term, Part Y in Kings County, and which appeared in the New York Law Journal (Jan. 10, 1968, p. 20, col. 1).
In that case plaintiff wife moved to compel defendant husband to comply with the terms of a stipulation entered into in open court at the conclusion of the trial of an action for judicial separation. Defendant cross-moved for an order vacating the stipulation and requesting that the court make a decision based on the trial record.
In granting plaintiff wife’s motion the court used the following language:
“ In light of the numerous conferences held before me in chambers and the stipulation of settlement agreed to by the parties and their very capable attorneys in open court, and with the parties’ full knowledge and understanding, I find no merit in defendant’s objections raised in opposition to plaintiff’s motion.
*612 “ To permit settlements so made to be vacated except upon a showing of good cause therefor, such as fraud, collusion, mistake, accident or some other ground of the same nature, would open the door to abuse and make litigation interminable. (Langlois v. Langlois, 7 A D 2d 779; Thompson Med. Co. v. Benjamin Pharmaceuticals, Inc., 4 A D 2d 504, 167 N. Y. S. 2d 267, 268; Collins v. Murphy, 232 N. Y. S. 2d 648, 36 Misc 2d 153; Karpinski v. Karpinski, 130 N. Y. S. 2d 364; Achtel v. Lieberman, 141 N. Y. S. 2d 750). * * *
“ The courts look with favor upon agreements and stipulations to end litigation, and will enforce them where possible. Such agreements .and stipulations, where made in open court, and where undisputed and proper, may be summarily enforced by motion, (Schlanger v. Schlanger, 129N. Y. S. 2d 750).”
As will readily appear therefrom the facts and the applicable law call for an enforcement of the stipulation herein. However as. pointed out in the very first paragraph of this court’s decision, the Family Court’s fragmented and truncated jurisdiction prevents it from enforcing the stipulation despite its validity and legal efficacy. (See Matter of Borkowski v. Borkowski, 38 A D 2d 752.)
1. The stipulation calls upon the wife to transfer her interest in certain real property to her husband. This the Family Court cannot do for lack of jurisdictional power.
2. The stipulation calls upon the wife to release her claim to any real property heretof ore owned jointly by the parties, and, to execute a stipulation of discontinuance of an action brought by her and still pending in thé Supreme Court, Queens County, against her husband; this the Family Court cannot do for lack of jurisdictional power.
3. The stipulation calls upon the wife to release her interest in a stock brokerage account held jointly by the parties hereto. This the Family Court cannot do for lack of jurisdictional power.
4. and 5. The stipulation calls upon the husband to pay the wife a property settlement of $10,000 and the further sum of $1,500 in repayment of sums heretofore advanced by her to him. This the Family Court cannot do for lack of jurisdiction unless somehow, these sums can be tied in and be determined to be part and parcel of the order of support herein.
6. The stipulation calls upon the husband to trailsfer' his. 1972 Vega automobile to his wife. This the Family Court cannot do for lack of jurisdiction and power.
7. The stipulation calls upon the husband to pay to the wife $150 per week as and for her support until May 26, 1973. This *613 the Family Court can do, but it would be unfair and inequitable to do'so since the stipulation herein was an over-all package agreement, with each provision being inextricably interwoven with the other, and each provision being part of the consideration for the other.
Accordingly, while this court has found that the respondent is entitled to the relief requested, to wit, enforcement of the stipulation spread upon the record before the court in settlement of the proceedings herein, it must refer the parties to the Supreme Court for further action and implementation. Nor can the court adjudge petitioner in contempt since to do so would be to punish petitioner for violating an order which this court lacks jurisdiction to enforce in the first place.
In closing the court would like to call attention to the Report of the Temporary Commission on the New York State Court System, Part II, pages 10 to 14, starting with “ jurisdictional problems ”, and covering .several facets of these most onerous problems, and where the following language is found:
“ The jurisdictional problems created by the present New York State court structure fall into 3 categories — fragmented jurisdiction, dissimilar procedures or results in essentially similar actions and over-lapping jurisdictions.
“ (P. 11) The compar tmentalization of subject matter into specialized courts has created situations where 2 courts are necessary to decide all aspects of a case, because no one court possesses the jurisdiction to decide all the issues. This fragmented jurisdiction creates serious problems for litigants and courts. It prevents a litigant from obtaining complete relief in one judicial forum and requires unnecessary duplication of court work * * *.
“ (P. 11) Over-lapping jurisdiction * * * leads to forum shopping and unnecessary duplication of court staffs ”.
Many other serious shortcomings of the present irrational jurisdictional hodgepodge are detailed in said same report, but the court has extracted only a token portion because of its specific relevancy, but recommends that the entire report on this problem be examined because of its practical recommendations in eradicating the fragmented jurisdiction of the Family Court with its attendant inequities.